UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD M. MAHER, Petitioner, | : | CIVIL NO. 3:CV-04-1277 |
| v. | : | (CHIEF JUDGE VANASKIE) |
| PENNSYLVANIA BOARD OF PROBATION AND PAROLE, ET AL., Respondents. | : | |

## MEMORANDUM

### I. Introduction

On June 14, 2004, Richard M. Maher filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner is currently housed at the Huntingdon State Correctional Institution ("SCI-Huntingdon"), Huntingdon, Pennsylvania. Named as Respondents are the Pennsylvania Board of Probation and Parole ("the Board") and former Acting Attorney General of Pennsylvania Gerald J. Pappert.[2]

---

[1] On June 28, 2004, Maher filed an Application to Proceed In Forma Pauperis. (See Dkt. Entry 5). However, as Maher has paid the $5.00 filing fee in this matter, the motion will be denied as moot. See Dkt. Entry 1, p. 8.

[2] The proper respondent in a petition for writ of habeas corpus is the official having custody of the applicant. See Rule 2 of the Rules Governing Section 2254 Cases In The United States District Courts, 28 U.S.C. foll. § 2254. In this case the proper respondent is the Superintendent at SCI-Huntingdon, James L. Grace. Petitioner, however, will not be directed to submit an amendment. Instead, the Court will liberally construe the petition as naming the (continued...)

Maher challenges the Board's May 14, 2004-decision to deny him reparole. He contends that the Board's determination violates the prohibition against ex post facto application of parole statutes and guidelines adopted subsequent to the commission of the crime for which he is currently imprisoned. He asserts that because any state court remedy he could pursue would be futile, his failure to exhaust such ineffective remedies should be excused. (Dkt. Entry 1, Petition.) For the reasons that follow, the Petition will be denied as I find no basis for an ex post facto violation in the denial of Petitioner's parole. As such, there is no need for discovery in this matter, and Maher's motion for the same will be denied.

## II. Background

Maher is serving two concurrent ten to twenty year sentences for robbery imposed by the Allegheny Court of Common Pleas on August 12, 1985. (Dkt. Entry 14, Exhibits in Support of Respondents' Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus, Dkt. Entry 14-2, Ex. A, Declaration of Benjamin A. Martinez ("Martinez Decl."), ¶ 21; Dkt. Entry 14-3, Ex. B, Sentence Status Summary.) His original minimum sentence date was August 25, 1999, and his maximum sentence was set to expire on August 15, 2009. (Id.) Maher has a prior criminal history reaching back to 1973. He has five additional robbery convictions, in addition to his two current robbery convictions. He has also been convicted of

---

[2](...continued)
appropriate respondent.

conspiracy to commit robbery and escape. (Dkt. Entry 14-2, Ex. A, Martinez Decl. at ¶ 22.)

Maher was first released on parole on September 22, 1999. (Dkt. Entry 14-2, Ex. A, Martinez Decl. at ¶ 23; Dkt. Entry 14-4, Ex. C, Board Decision 08/03/99.) On November 21, 1999, Maher was arrested and charged with Involuntary Deviate Sexual Intercourse ("IDSI"), Aggravated Assault, and Robbery. (Dkt. Entry 14-2, Ex. A, Martinez Decl. at ¶ 24; Dkt. Entry 17, Petitioner's Traverse, p. 4.) On March 27, 2000, the Board issued a decision to detain Maher pending the disposition of his new criminal charges. (Dkt. Entry 14-2, Ex. A, Martinez Decl. at ¶ 25; Dkt. Entry 14-5, Ex. D, Board Decision 03/2700.) On August 15, 2000, Maher pled no contest to the reduced charge of Simple Assault and was sentenced to one (1) year probation. (Dkt. Entry 14-2, Ex. A, Martinez Decl. at ¶ 26.) [3]

On October 27, 2000, the Board recommitted Maher as a technical parole violator, directing he serve twelve months backtime for the simple assault offense. His maximum sentence as a parole violator was set as June 27, 2010. (Id. at ¶ 27; see also, Dkt. Entry 14-6, Ex. E, Board Decisions of 10/27/00 and 02/06/01.) On August 29, 2001, he was reviewed and denied reparole. (Id. at ¶¶ 28-29; Dkt. Entry 14-7, Ex. F, Board Decision

[3] The parties dispute the facts surrounding this event. According to Respondents, the original charges of IDSI, Aggravated Assault and Robbery were made when Maher picked up a transvestite, forced him to engage in fellatio, and then robbed him. (Dkt. Entry 12, p. 3; Martinez Decl. at ¶ 24.) Maher, however, claims a male hitchhiker whom he picked up tried to rob him at knife point. He adds that his struggle to defend himself was witnessed by local police. After the police completed their investigation, the Commonwealth dropped the original charges and charged him with simple assault. (Dkt. Entry 17, Petitioner's Traverse, p. 4.)

08/29/01.) On August 21, 2002, the Board issued a decision to parole Maher for a second time. (Dkt. Entry 14-8, Ex. G, Board Decision 08/21/02.)

On February 24, 2003, Maher was released on reparole to Renewal, Inc. ("Renewal"), a group home. (Dkt. Entry 14-2, Ex. A, Martinez Decl. at ¶ 29.) On May 20, 2003, Maher was discharged from Renewal after allegedly improperly cashing payroll checks and for refusing to cooperate with a therapist with regard to an evaluation for sex offender counseling. (Id. at ¶ 30.)

On June 24, 2003, the Board recommitted Maher as a technical parole violator to serve twelve months backtime time as a result of his termination from Renewal. Maher's maximum sentence as a parole violator remained June 27, 2010. (Dkt. Entry 14-2, Ex. A, Martinez Decl. at ¶¶ 31-32; Dkt. Entry 14-9, Ex. H, Board Decision 06/24/03.)

Maher's petition focuses on his May 14, 2004, denial of parole. In its May 14, 2004, decision, the Board denied parole and determined that Petitioner's parole eligibility would be reviewed in or after May 2005. (Dkt. Entry 14-10, Ex. I, Board Decision 05/14/04.) The decision explaining the Board's action stated that:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 et seq., the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be

> injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time. The reasons for the Board's decision include the following:
>
> Your lack of remorse for the offense(s) committed. The recommendation made by the Department of Corrections. Reports, evaluations and assessments concerning your physical, mental and behavior condition and history. Your interview with the hearing examiner and/or board member.
>
> You will be reviewed in or after May, 2005. At your next interview, the Board will review your file and consider: whether you have received a favorable recommendation for parole from the Department of Corrections[; w]hether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s).

(Id.) In Maher's traverse, he contends the Board denied him parole for his failure to feel remorse and/or admit to a sex crime that he never committed or was convicted of committing. Likewise, he claims the Department of Corrections withheld a favorable parole recommendation for the same reason. (Dkt. Entry 17, Petitioner's Traverse, p. 6.)

## III. Discussion

### A. Exhaustion of State Court Remedies

As a threshold matter, a habeas petitioner must either show that the federal constitutional claims asserted in the federal habeas petition have been "fairly presented" to the state courts, or that there is an absence of available state court corrective process, or that circumstances exist rendering the available state court process ineffective to protect the

petitioner's rights. See 28 U.S.C. § 2254(b).[4] Maher argues that exhaustion should be excused because the state courts would have ruled that they lacked jurisdiction to consider his claims.

I note that since the filing of the Petition and the Response there have been important federal and state case law developments in the area of when, and if, a Pennsylvania state prisoner must seek state court review of a denial of parole. Specifically, in January 2005, the Third Circuit Court of Appeals in Defoy v. McCullough, 393 F3d 439, 445 (3d Cir. 2005), held that a state prisoner challenging the denial of parole on constitutional grounds, other than a violation of the ex post facto clause, was not required to exhaust state court remedies before pursuing federal habeas review. Almost exactly one month later, the Pennsylvania Supreme Court decided Cimaszewski v. Bd. of Prob. & Parole, ___ Pa. ___, 868 A.2d 416, 427 (2005), which expressly overruled Finnegan v. Bd. of Prob. & Parole, 576 Pa. 59, 838 A.2d 684 (2003), to the extent that the Pennsylvania Supreme Court now recognizes that an ex post facto claim

---

[4] Section 2254(b)(1) of title 28 U.S.C. provides:

> (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that --
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

may arise when the 1996 amendments are applied to an applicant convicted prior to the enactment of the amendments who can show that they "create[ ] a significant risk of prolonging his incarceration." These recent case developments support the Respondents' contention that exhaustion should not be excused. However, as Maher filed his petition several months prior to Defoy and Cimaszewski, and given the "considerable jurisprudential confusion" at the time surrounding this issue, it is unreasonable to expect that he could have predicted the Pennsylvania Supreme Court's decision. Defoy v. McCullough, 393 F.3d 439, 446 (3d Cir. 2005)(Weis, J., concurring). Nonetheless, I need not resolve the thorny question of exhaustion as the claims asserted in the habeas petition are clearly without merit.[5] See 28 U.S.C. § 2254(b)(2)(a federal court can deny a habeas petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

B. The Merits of the Ex Post Facto Claim

Maher challenges the Board's denial of parole on the ground that it violates the Ex Post Facto Clause of the United States Constitution due to a 1996 amendment to 61

---

[5] Recently the Supreme Curt ruled that an ex post facto claim of the nature presented here may be pursued in an action under 42 U.S.C. § 1983. Wilkinson v. Dotson, — U.S. — , 2005 WL 516415 (2005). There is no need to exhaust state court remedies before filing a § 1983 action. Although Justice Scalia, in a concurring opinion in which Justice Thomas joined, suggested that habeas corpus would not be available to pursue such a claim, the majority ruling did not resolve this issue. Whether habeas corpus relief is or is not available with respect to the claims advanced by Maher is not presently before this Court. Furthermore, the issue is academic here because the underlying claims are without merit.

Pa.Stat. §331.1, the statute governing parole standards. He seeks an order compelling the Board to review his qualifications for parole under the pre-1996 law.

"The Ex Post Facto clause of the United States Constitution applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" Mickens-Thomas v. Vaughn, 321 F.3d 374, 383 (3d Cir. 2003)("Mickens-Thomas I"), quoting, California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995). Ex post facto restrictions apply to parole matters. See Garner v. Jones, 529 U.S. 244, 250-255 (2000).

In 1996, the Pennsylvania legislature amended the section of its parole law setting forth the public policy statement of the Commonwealth concerning parole. Specifically, the 1996 legislation decreed that "the board shall first and foremost seek to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[6] Before then, section 331.1 made no mention of

---

[6] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, *the board shall first and foremost seek to protect the safety of the public*. In addition to this goal, the board shall address input by crime victims and *assist in the fair administration of justice* by ensuring the custody, control and treatment of paroled offenders.

pubic safety, and in fact declared the public policy of the Commonwealth to be that parole would be a period of rehabilitation of an inmate for his restoration to society.[7]

In Mickens-Thomas I, our Court of Appeals assessed the impact of the amended statute as construed by the Board and applied in that case. The court explained that the essential inquiry was "whether, in practice, the new language has altered the fundament for reviewing parole applications." Id. at 384 (emphasis added). In finding an Ex Post Facto violation in Mickens-Thomas I, the Third Circuit observed that there was "significant evidence that [the Board] acted upon policies that were established after [the petitioner]'s crime and conviction." Id. at 393. The Third Circuit explained:

> [A] parole decision that fails to address any of the criteria mandated by Board policy, such as institutional recommendations, willingness to undergo counseling and educational achievement,

---

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).

[7] Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

> and instead utterly ignores all factors counseling in favor of release, falls outside the realm of the legitimate exercise of discretion under the pre-1996 policies. Inference instructs us that the Board inappropriately relied on policies implemented in 1996, rather than the parole policies in place at the time of Thomas's crime and conviction.

Id. at 387. Of substantial concern to the Third Circuit was the fact that the evidence demonstrated that the Board interpreted the amended statute to "mandate foremost the consideration of public safety." Id. at 391. "The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." Id. Notwithstanding this conclusion, the Third Circuit also acknowledged a recent decision of the Pennsylvania Supreme Court, Winklespecht v. Pa. Bd. of Prob. & Parole, 571 Pa. 685, 813 A.2d 688 (2002), which concluded that the amended § 331.1 did not require the Board to place the greatest weight on considerations of public safety. Id. However, the Court of Appeals concluded that the Winklespecht decision, "made after the Board's actions on Thomas's parole, came too late to alter the Board's view of the statutory amendment on the outcome of the case." Id. (emphasis in original.)

In Mickens-Thomas I, as well as in other rulings issued by the Third Circuit, the appropriate remedy for an Ex Post Facto violation has been to remand the matter to Board for

reconsideration, applying the pre-1996 law.[8] Hart v. Pa. Bd. of Prob. & Parole, 2003 WL 22838381 (3d Cir. Nov. 23, 2003); see also McLaurin v. Larkins, 2003 WL 22147497 (3d Cir. Sept. 18, 2003); Hollawell v. Gillis, 65 Fed. Appx. 809, 2003 WL 1919371, at *8 (3d Cir. April 23, 2003). However, the class of individuals awarded such relief has been limited to those who were denied parole after adoption of the 1996 changes, and before Winklespecht clarified the fact that the amendment did not change the administration of the policies. In those cases where parole was denied after Winklespecht, it was evident that the denial of parole was based upon factors that would have resulted in the denial of parole under pre-1996 policies and practices. See Grob v. Pa. Bd. of Prob. & Parole, Civil No. 3:CV-04-0275, slip op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); Sphar v. Pa. Bd. of Probation & Parole, Civil No. 3:CV-04-1145, slip op. at 7 (M.D. Pa. Oct. 29, 2004)(Munley, J.); Schaeffer v. Pa. Bd. of Probation & Parole, Civil No. 3:CV-04-1159, slip op. at 8 (M.D. Pa. Oct. 26, 2004)(Munley, J.).

The Board argues that Maher's reliance on Mickens-Thomas I is misplaced as his May 14, 2004, parole review occurred after the Pennsylvania Supreme Court had decided Winklespecht, supra. Maher insists that the Board relied on the 1996 legislative change to deny parole.

---

[8] Following remand in Mickens-Thomas I, the Board again denied parole. Our Court of Appeals found that the Board had exhibited "willful noncompliance, bad faith, and . . . vindictiveness" sufficient to direct the release of the petitioner. Mickens-Thomas v. Vaughn, 355 F.3d 294, 310 (3d Cir. 2004) ("Mickens-Thomas II").

The Board's decision denying Maher parole does not mention risk to public safety as a reason for denying parole. Rather, the reasons for denying parole are more directed to the Board's perception of his rehabilitation.[9] See Dkt. Entry 14-10, Ex. I, Board Decision 05/14/04. The specific reasons given by the Board for denying Maher parole are ones that were appropriately considered before 1996 and merit denial of parole under the pre-1996 standard: his lack of remorse for the offense(s) committed; his failure to secure a favorable recommendation by the Department of Corrections; reports, evaluations and assessments concerning his physical and mental condition and history; as well as his interview with the hearing examiner and/or board member.[10] Thus, Maher's argument that the Board erroneously made public safety a controlling factor in reviewing him for parole is without merit. Based on the Petitioner's extensive criminal record and prior parole failures, it is clear that there is a substantial basis for denying parole regardless of the 1996 amendments to the Parole Act.

---

[9] Even if Maher construes the enumerated reasons as public safety oriented, this does not create an ex post facto concern as public safety has always been a parole consideration. Mickens-Thomas I simply instructs that it is not to be given any greater weight than the other numerous individualized factors to be considered by the Board. Mickens-Thomas I, 321 F.3d at 385.

[10] For "nature and circumstances of the offense(s) committed" and "physical, mental and behavioral condition and history," see 61 P.S. § 331.19 (Purdon's 1999)(cited in Reynolds v. Pa. Bd. of Prob. & Parole, 809 A.2d 426, 432 n.7 (Pa. Commw. 2002); for "interview with hearing examiner and/or board member" and "sex offender treatment," see Reynolds, 809 A.2d at 433 n.9; for "additional institutional programs," See Mickens-Thomas, 321 F.3d at 378 (stating that "institutional adjustment(behavior and program adjustment)" was to be considered pre-1996).

Unlike Mickens-Thomas I, this case does not include evidence that institutional authorities have recommended parole and that the petitioner has completed treatment programs. Nor is there evidence that the Board has changed the reasons for denying parole. Thus, unlike Mickens-Thomas I, the facts of record do not support a reasonable inference that the Board has concocted reasons to justify applying 1996 criteria to deny Maher parole.

After Winklespecht, there must be at least some evidence supporting a rational inference that the Board is taking action contrary to the result that would have obtained prior to 1996. See Shaffer v. Meyers, 338 F. Supp. 2d 562, 565-66 (M.D. Pa. 2004); Dunston, supra, 2004 WL 2203725, at * 7. The mere denial of parole is not sufficient to raise such an inference. Otherwise, a court is unable to discern that, in practice, the Board has elected to apply new policies to inmates whose crimes were committed before 1996. Where, as here, the Board articulates a rationale for denial of parole consistent with its pre-1996 practice and policies no inference of an Ex Post Facto violation may be drawn.

C. The Board's Consideration of Maher's 1999 IDSI arrest.

In his traverse, Maher, for the first time raises a challenge to the Board's action on the basis that it inappropriately denied him parole because of his failure to feel remorse for a sex crime he never was convicted of committing, and for failing to participate in sex offender therapy/evaluation. He also claims the Department of Corrections is withholding their recommendation for parole for similar reasons. See Dkt. Entry 17. Maher acknowledges that he

was arrested for IDSI in 1999. Because that charge was dropped, and thus he is not a convicted sex offender, he contends that he should not be forced to participate in such a program to gain parole release.

The unsubstantiated premise of Maher's argument is that his refusal to participate in a sex offender's program caused the denial of parole. On the contrary, Maher was granted re-parole in 2002 despite the fact that he had not participated in such a program. In granting parole in 2002, the Board did require that Maher be evaluated to determine his "need for sex offender treatment," but there is no evidence that his failure to undergo such an evaluation or participate in a sex offender treatment had anything to do with the denial of parole in May of 2004. Had Maher been required to participate in such a Department of Corrections program, there would be documentation substantiating the requirement. Thus, there is nothing to suggest that the Board could not, would not, or did not grant Maher reparole in 2004 strictly on the basis of his refusal to participate in a sex offender program.

## IV. Conclusion

Maher's petition lacks substantive merit, and there is no basis for issuing a certificate of appealability in this matter. An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

Dated: June 3, 2005

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD M. MAHER, | : | |
| Petitioner, | : | CIVIL NO. 3:CV-04-1277 |
| v. | : | (CHIEF JUDGE VANASKIE) |
| PENNSYLVANIA BOARD OF PROBATION AND PAROLE, ET AL., | : | |
| Respondents. | : | |

O R D E R

NOW, this 3rd day of JUNE, 2005, for the reasons set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1. The petition for a writ of habeas corpus (Dkt. Entry 1) is DENIED.

2. The Clerk of Court is directed to mark this matter CLOSED.

3. There is no basis for the issuance of a Certificate of Appealability.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

TIV:pdt